### UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MERIBETH GHOST, | Civil Action No. 14-215 |
| Plaintiff, | |
| v. | |
| VICTORY RECOVERY SERVICE, INC., FIRST RE-ACTION, INC., RS FINANCIAL MANAGEMENT, LLC, JOHN A. DeCARO, DANIELLE DeCARO, CRAIG MANSFIELD, & DANIEL J. FREGLETTE, MARK J. DAVIS, & ANDREW SCHWARTZ | |
| Defendants. | |

### MOTION TO DISMISS ACTION AGAINST SPECIALLY-APPEARING DEFENDANT CRAIG MANSFIELD UNDER RULES 12(b)(1), (2) and (5)

Specially-appearing Defendant Craig Mansfield ("Defendant Mansfield"), in his capacity as Co-Manager of Sovereign Lending Solutions, LLC ("SLS"), a wholly-owned and operated instrumentality of the Lac Vieux Desert Band of Lake Superior Chippewa Indians ("Tribe"), a federally recognized Indian tribe, respectfully moves this Court to dismiss Plaintiff's Complaint for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1); for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2); and for insufficient service of process pursuant to Fed. R. Civ. P. 12(b)(5).

Defendant Mansfield respectfully requests that this Motion to Dismiss be granted pursuant to Fed. R. Civ. P. 12(b)(1), (2) and (5) because SLS and its respective officers and agents acting in their official capacity, retain sovereign immunity from suit. Absent an effective and explicit waiver of said sovereign immunity - which Plaintiff has not and cannot demonstrate - this Court

is barred from presiding over this matter or over Defendant Mansfield pursuant to Fed. R. Civ. P. 12(b) (1) and (2).   Furthermore, Plaintiff failed to properly effectuate service upon Defendant Mansfield, warranting dismissal pursuant to Fed. R. Civ. P. 12(b)(5).

This motion is based on the accompanying *Brief in Support of Motion to Dismiss Action Against Specially-Appearing Defendant Craig Mansfield Under Rules 12(b)(1), (2) and (5)*; the Declaration of James Williams, Jr., Tribal Chairman, the Declaration of Craig Mansfield, SLS Co-Manager, the Declaration of Misaabe McGeshick, Regulatory Agent, the Declaration of Beth Haapala, Administrative Secretary; and a proposed Order Dismissing Plaintiffs' Complaint; all pleadings and records heretofore filed in this action; and all relevant matters subject to judicial notice.

Defendant Mansfield respectfully requests that this Court grant its Motion to Dismiss the Amended Complaint; specifically requesting oral argument on the same.

Dated:  February 11, 2014

ROSETTE, LLP

*/s/ Tanya Sue Wanageshik*
Tanya Sue Wanageshik (MI P72933)
*(Admitted Pro Hac Vice)*
25344 Red Arrow Hwy., Suite B
Mattawan, MI 49071
(269) 283-5005 (voice)
(517) 913-6443 (fax)

*Pro Hac Vice Sponsor*
John M. Willis, Esq. (PA 38622)
The Law Offices of John M. Willis
Three Penn Center
1515 Market Street, Suite 1510
Philadelphia, PA 19102
(215) 498-1000 (office)

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MERIBETH GHOST | ) | Case No. 2:14-cv-00215-HB |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v., | ) | |
| | ) | |
| VICTORY RECOVERY SERVICE, INC., | ) | |
| FIRST RE-ACTION, INC., RS FINANCIAL | ) | |
| MANAGEMENT, LLC, JOHN A. DeCARO, | ) | |
| DANIELLE DeCARO, CRAIG MANSFIELD, | ) | |
| & DANIEL J. FREGLETTE, MARK J. DAVIS, | ) | |
| & ANDREW SCHWARTZ | ) | |
| | ) | |
| Defendants. | | |

## BRIEF IN SUPPORT OF MOTION TO DISMISS ACTION AGAINST SPECIALLY-APPEARING DEFENDANT CRAIG MANSFIELD UNDER RULES 12(b)(1), (2) and (5)

## TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................................................1

II.  FACTS ....................................................................................................................2

III. ARGUMENT ...........................................................................................................7

    A.  Standard of Review ...........................................................................................7

    B.  This Motion to Dismiss Must be granted Because the Tribe is Immune to Suit Absent Consent or Congressional Abrogation under the Doctrine of Tribal Sovereign Immunity. ............................7

    C.  SLS is a Wholly Owned and Operated Instrumentality of the Tribe Over Which This Court Does Not and Cannot Exercise Subject Matter Jurisdiction. .............................................9

    D.  Individual Tribal Officials or Employees Acting in their Official Capacity Enjoy the Protection of Sovereign Immunity of the Tribe. ......................................................12

    E.  Sovereign Immunity Precludes the Exercise of Personal Jurisdiction by the Court .................... 14

    F.  Assuming Arguendo Personal Jurisdiction Exists, Service of Process was not Perfected Properly on Defendant Mansfield Pursuant to 12(b)(5). ...........................................15

    G.  Plaintiff has Failed to Allege Any Facts in the Complaint from which this Court Could Determine that the Tribe Waived its Sovereign Immunity. ..........................................17

IV.  CONCLUSION .......................................................................................................18

# TABLE OF AUTHORITIES

**Cases**

Ameriloan v. Superior Court,
169 Cal. App. 81 (2008)................................................................................................10

Breakthrough Mgmt. Croup, Inc. v. Chukchansi Gold Casino and Resort,
629 F.3d 1173, 1181 (10th Cir. 2010)......................................................................11, 12

California State Board of Equalization v. Chemehuevi Indian Tribe,
474 U.S. 9 (1985)..................................................................................................15, 17

Chemehuevi Indian Tribe v. California State Board of Equalization,
757 F.2d 1047 (9th Cir. 1985)................................................................................14, 17

Cook v. AVI Enters. Inc.,
548 F.3d 718, 725 (9th Cir. 2008)..................................................................................10

Hagen v. Sisseton Wahpeton Comm. College,
205 F.3d 1040 (8th Cir. 2000)......................................................................................13

Hamilton v. Nakai,
453 F.2d 152, 158-159 (9th Cir. 1971)..........................................................................15

High Desert Recreation, Inc. v. Pyramid Lake Paiute Tribe of Indians,
341 F. App'x 325, 327 (9th Cir. 2009)..........................................................................10

Imperial Granite Co. v. Pala Band of Missouri Indians,
940 F.2d 1269, 1271 (9th Cir. 1991).............................................................................13

In re Green v. Richardson,
980 F.2d 590 (9th Cir. 1992).........................................................................................10

Kehr Packages, Inc. v. Fidelcor, Inc.,
926 F.2d 1406, 1409 (3d Cir. 1991) cert. denied, 501 U.S. 1222 (1991).........................7

Kennerly v. United States,
721 F.2d 1252, 1258 (9th Cir. 1983).............................................................................15

Kiowa Tribe of Oklahoma v. Manufacturing Technologies, Inc.,
523 U.S. 751, 754-56 (1998)..........................................................................8, 9, 10, 17

Magyar v. Kennedy,
No. 12-5906, Slip Op., 2013 WL 6119243, *3 (E.D.Pa. Nov. 20, 2013)....................13, 14

Mortensen v. First Fed. Sav. and Loan Ass'n,
549 F.2d 884, 891 (3d Cir. 1977)....................................................................................7

Okla. Tax. Comm'n v. Citizen Band of Potawatomi Indian Tribe,
498 U.S. 505, 509 (1991) ...................................................................................8, 9

Pan American v. Sycuan Band of Mission Indians,
884 F.2d 416, 418 (9th Cir. 1989) .............................................................13, 14, 17

People v. MNE,
Case No. B242644, Slip Op. (2nd App. Dist. Jan. 21, 2014) ...................................10

Puyallup Tribe v. Washington Dept. of Game,
433 U.S. 165, 172 (1977) ...........................................................................8, 13, 17

Ramey Constr. Co. v. Apache Tribe of the Mescalero Reservation,
673 F.2d 315, 320 (10th Cir. 1982) ........................................................................10

Santa Clara Pueblo v. Martinez,
436 U.S. 49, 58 (1978) ...........................................................................................8, 17

United States v. Oregon,
657 F.2d 1009, 1012, n. 8 (9th Cir. 1981) .............................................................13

United States v. U.S. Fidelity & Guaranty Co.,
309 U.S. 506, 512-14 (1940) ....................................................................................8

Weeks Constr. Inc. v. Oglala Sioux Housing Auth.,
797 F.2d 668, 670-1 (8th Cir. 1986) ........................................................................10

## Statutes

25 U.S.C.A. § 1300(h)(2) ........................................................................................6

## Rules

Fed. R. Civ. P. 12 (b)(1) ................................................6, 7, 11, 13, 16, 18, 22
Fed. R. Civ. P. 12 (b)(2) ....................................................................6, 7, 19, 22
Fed. R. Civ. P. 12 (b)(5) .........................................................................6, 7, 22
Fed. R. Civ. P. 4 ...................................................................................20, 21
Fed. R. Civ. P. 4(d) ...............................................................................19, 20
Fed. R. Civ. P. 4(e)(1) ...................................................................................7
Fed. R. Civ. P. 4(i) ......................................................................................19
M.C.R. 2.105 ...............................................................................................20
Pa. R.C.P. No. 402 .......................................................................................20
Pa. R.C.P. No. 403 .......................................................................................20
Pa. R.C.P. No. 404 .......................................................................................20

## Other Authorities

79 Fed. Reg. 4748 ...........................................................................................8

# I.    INTRODUCTION

Specially-Appearing Defendant[1] Craig Mansfield ("Defendant Mansfield") is a Co-manager of Sovereign Lending Solutions, LLC ("SLS"), d/b/a Title Loan America, a wholly owned and operated instrumentality of the Lac Vieux Desert Band of Lake Superior Chippewa Indians ("Tribe" or "LVD"), a federally-recognized Indian Tribe located in Watersmeet, Michigan. This lawsuit is nothing more than a veiled attempt to bring an action against SLS, an economic development arm and instrumentality of the Tribe, through the naming of Defendant Mansfield in a Complaint alleging facts about actions taken by Defendant Mansfield in his official capacity as the SLS Co-Manager. Indeed, the Complaint purposefully fails to name SLS as a Defendant to avoid the jurisdictional bar of the doctrine of tribal sovereign immunity that prohibits suit. (Compl., Docket No. 1, generally). Defendant Mansfield respectfully submits that such creative pleadings must fail and this action must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) and (2) for lack of subject matter jurisdiction of this Court and lack of personal jurisdiction over Defendant Mansfield. The long standing legal precedent of the United States Supreme Court and this Circuit extends sovereign immunity to tribal entities, arms or instrumentalities of the tribe and tribal employees acting within the scope of his or her authority which includes Defendant Mansfield.

In addition, pursuant to Fed. R. Civ. P. 12(b)(5), service of the Complaint was deficient and void on Defendant Mansfield insofar as the rules for proper service of the Commonwealth of Pennsylvania relied upon by the Plaintiff to serve Defendant Mansfield should have been

---

[1] Defendant's special appearance in this matter is not intended to serve as a waiver of any of their arguments concerning this Court's lack of subject matter and personal jurisdiction. Indeed, courts have routinely recognized that a sovereign's limited appearance in legal proceedings for the purpose of seeking dismissal for lack of jurisdiction does not waive any claims to sovereign immunity. *See e.g.*, *Kansas v. United States*, 249 F.3d 1213, 1220 (10th Cir. 2001); *Zych v. Unidentified, Wrecked and Abandoned Vessel*, 960 F.2d 665, 667-68 (7th Cir. 1992); *Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Norton*, 327 F. Supp. 2d 995, 1000 (W.D. Wis. 2004); *Wyandotte v. Kansas City*, 200 F. Supp. 2d 1279, 1287 (D. Kan. 2002); *Miami Tribe of Okla. v. Walden*, 206 F.R.D. 238 (D. Ill. 2001).

substituted with applicable rules for service of the State of Michigan, where service was attempted. Notwithstanding such procedural error, both states require that service be delivered restricted and signed for by Defendant Mansfield to be proper. Such delivery has not occurred.

Notwithstanding the lack of service under Fed. R. Civ. P. 4(e)(1) and the procedural rules for service in either Pennsylvania or Michigan, and despite the fact that Defendant Mansfield is named in his individual capacity; it is clear from the Complaint's creative pleading that Defendant Mansfield is being sued in his capacity as a SLS Co-Manager. Therefore, service must be perfected in accordance with the consent of SLS or at the very least on SLS's registered agent in addition to Defendant Mansfield. Service was neither waived nor made pursuant to SLS's consent and service was not made on the registered agent for service of SLS, the Tribal Chairman, as is required by the SLS Articles of Organization. Therefore, proper service has not and cannot occur despite the Affidavit of the Plaintiff attorney filed with this Court on January 29, 2014 that purports to reflect proper service of Defendant Mansfield in accordance with Pennsylvania state law at his place of employment. (Pl. Aff. of Service, Docket No. 2).

Defendant Mansfield, hereby submits this Brief in support of his Motion to Dismiss the Plaintiff's Complaint for lack of personal and subject matter jurisdiction and insufficient service of process pursuant to Fed. R. Civ. P. 12(b)(1), (2) and (5). ("Motion to Dismiss").

## II.    FACTS

1. Meribeth Ghost ("Plaintiff") filed a Complaint in the United States District Court for the Eastern District of Pennsylvania on January 14, 2014. The Plaintiff entered Pawn Tickets and Security Agreements and ACH Authorizations (the "Loan Documents") on or about June 12,

2012, July 1, 2012, and August 1, 2012 pursuant to Tribal law. (Ex. 8, Loan Documents; and Ex. 13). The Loan Documents contain a choice-of-law provision, which states: "**GOVERNING LAW:** This Pawn Agreement [and ACH Authorization] shall be governed by the laws of the Lac Vieux Desert Band of Lake Superior Chippewa Indians." (Ex. 8 and Ex. 13). The Loan Documents also contain specific provisions related to the preservation of sovereign immunity of SLS and thereby its officers, agent and employees. (Ex. 8 and Ex. 13). The Loan Documents also contains specific provisions related to consumer complaints and dispute resolution providing a consumer complaint hotline through the Tribal Dispute Resolution Administrator as well as the ability to request the consumer dispute resolution procedures available within the Tribal forum. (Ex. 8 and Ex. 13). Pursuant to the Loan Documents SLS transmitted a sum of $2,150.00 to Plaintiff on June 12, 2012, with renewals of $2,150.00 on July 1, 2012 and August 1, 2012. (Ex. 8 and Ex. 13). Plaintiff made payments to SLS between June 2012 through April 2013 totaling $5,793.05. (Ex. 10, Payment Schedules; and Ex. 13). After April 2013, Plaintiff failed to make payments as agreed to SLS to satisfy the terms of her Loan Documents resulting in the default of her loan. (Ex. 8, Ex. 10 and Ex. 13). After several attempts by SLS to make payment arrangements with Plaintiff without success to clear up the default under the terms of the Loan Documents, the security pledged as collateral for the loan made by SLS was repossessed on September 11, 2013. (Ex. 13). SLS notified Plaintiff of her right to redeem the security pledged under the Loan Documents for a period of ten (10) days to which she did not respond. (Ex. 13). On December 18, 2013, the security pledged as collateral pursuant to the Loan Documents was sold for $1,000.00. (Ex. 13).

In Count III, the Complaint names, among others, Defendant Mansfield and alleges violations of the Racketeer, Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §

1962(c).  (Compl. ¶¶ 52-84).   The Complaint clearly sets forth Defendant Mansfield's role as "authorized representative" and Co-Manager of SLS. (Compl. ¶¶ 16, 17, 60 and 61.).   The Complaint appropriately recognizes SLS as a business entity of the Tribe. (Compl. ¶ 9). Nowhere in the Complaint are there allegations that Defendant Mansfield acted in a capacity other than that as an "authorized representative" and Co-Manager of SLS.

LVD is a federally-recognized Indian tribe consisting of 762 members who continue to reside close to their ancestral homeland near the town of Watersmeet, Michigan.  (Ex. 1, 25 U.S.C.A. § 1300(h)(2); Ex. 2, 79 Fed. Reg. 4748; and Ex. 11, Decl. of J. Williams, Jr.).  As with other sovereigns, the Tribe has governed itself according to internal laws, regulations and cultural norms since time immemorial.

As a federally recognized Indian tribe maintaining all inherent attributes of sovereignty, the Tribe enacted the Constitution of the LVD ("LVD Constitution") as the supreme law of the Tribe "govern[ing] [themselves] under [their] own laws and customs, to maintain and foster [their] tribal culture, to protect [their] homeland and to conserve and develop [their] natural resources, and to insure [their] rights guaranteed by treaty with the Federal government...".  (Ex. 3, LVD Const., Preamble; and Ex. 11).  The LVD Constitution specifically appoints the LVD Tribal Council ("Tribal Council") as the governing executive/legislative body of the Tribe with the authority "[t]o manage the economic affairs, enterprises, property, both real and personal, and other interests of the [Tribe]" and "[t]o promulgate ordinances, and adopt resolutions...and to enforce the same[]".  (Ex. 3, LVD Const., Art. IV, §1(f) and (b); and Ex. 11).

On March 30, 2010 and pursuant to the LVD Constitution, the Tribal Council, through a duly-approved Tribal Council Resolution 2010-018, adopted the Limited Liability Company Code of the Lac Vieux Desert Band of Lake Superior Chippewa Indians (the "LLC Code").  (Ex.

4, LLC Code; and Ex. 11). The LLC Code provides that "nothing in...the Limited Liability Code shall be construed as a waiver of the [Tribe's] sovereign immunity, including, but not limited to the immunity of its entities, agents, officers, employees, or elected officials. (Ex. 4, Tribal Council Resolution 2010-018; and Ex. 11). Furthermore, the LLC Code clearly retains jurisdiction of the Tribe and provides "that nothing in...the Limited Liability Code shall be construed to grant jurisdiction to any other governmental agency or entity other than the [Tribe]." (Ex. 4, Tribal Council Resolution 2010-018; and Ex. 11).

After considerable diligence on the part of the Tribe regarding tribal lending as a viable means of economic development, the Tribe enacted the Tribal Consumer Financial Services Regulatory Code ("Regulatory Code") authorizing consumer lending and creating a regulatory body, the Tribal Financial Services Regulatory Authority ("TFSRA"), to oversee and regulate lending activities of the tribal lending entities. (Ex. 6, Regulatory Code; Ex. 11; Ex. 12, Decl. of M. McGeshick; and Ex. 13, Decl. of C. Mansfield). The TFSRA licenses, examines, audits, and serves as a dispute resolution body for consumer complaints. (Ex. 6; Ex. 11, and Ex. 12).

On or about July 8, 2011, SLS was created under the Tribe's LLC Code pursuant to Tribal Council Resolution # 2011-031 as amended by Tribal Council Resolution # 2012-001 through the adoption of the Articles of Organization and Operating Agreement of SLS ("SLS Creation Documents") for the purpose of promoting the self-sufficiency of the Tribe and its members and families, and to address the socio-economic needs of the Tribe, its members, and its community. (Ex. 5, SLS Creation Documents; and Ex. 11). Specifically, the Tribal Council determined that the formation of SLS was "in the best interest of the Tribe to form...an independent tribally chartered entity, to transact business in the form of a tribally-owned lending enterprise". (Ex. 5, Tribal Council Resolution 2011-031; and Ex. 11). SLS is a wholly-owned

instrumentality of the Tribe, operating in good standing, licensed and regulated by the TFSRA pursuant to the Regulatory Code. (Ex. 6; Ex. 7, SLS Licenses; Ex. 11 and Ex. 12). The Tribe retains full control over SLS operations through the Co-Managers appointed by the Tribe who are charged with overseeing the day to day operation of the SLS subject to limitations described within the SLS Operating Agreement. (Ex. 5, Ex. 11, Ex. 12, and Ex. 13). Nothing within the SLS Creation Documents purports to waive the immunity of the Tribe, SLS or the Co-Managers. (Ex. 5 and Ex. 11). SLS and its Co-Managers are authorized to originate, process and collect loans made in accordance with the Regulatory Code. (Ex. 6).

On January 21, 2014, Plaintiff attempted to serve the Complaint upon Defendant Mansfield by United States Certified Mail Return Receipt Requested Restricted Delivery[2] at the Lac Vieux Desert Resort Casino located at N5383 US 45, Watersmeet, MI 49969. (Ex. 9, Envelope Containing Compl.; and Ex. 14, Decl. of B. Haapala); *See also* Pl. Aff. of Service, Docket No. 2.. The envelope within which the Summons and Complaint was contained was an inconspicuous pink floral 11x 17 envelope containing a return address of "RFS, 2626 S. Mildred St., Phila., PA 19148" that did not identify the contents as being from a law office or related to a legal matter. (Ex. 9 and Ex. 14). Despite the notation of "Restricted Delivery" Defendant Mansfield did not sign for the Complaint, but rather an employee of the Lac Vieux Desert Casino Resort, signed on his behalf while collecting mail in the normal course of her job duties. (Ex. 14). Neither Tribal law nor the SLS Creation Documents authorize service at the LVD Resort Casino. (Ex. 5 and Ex. 11). Moreover, SLS Creation Documents do not authorize service of process to Defendant Mansfield but rather names the Tribal Chairman as the registered agent for service of process. (Ex. 5 and Ex. 11). In relevant part, the SLS Operating Agreement expressly

---

[2] *See* http://about.usps.com/publications/pub370/pub370_013.htm. Restricted delivery service ensures that mail is delivered only to a specific addressee or the addressee's authorized agent. The addressee must be an individual (or natural person) specified by name.

provides that "[t]he name and business address of the agent for service of process for the Company is the elected Tribal Chairman of the Tribe, or such other person as the Company shall appoint from time to time."  (Ex. 5, Operating Agreement Art. 1, § 1.8).  To date, the Tribal Chairman remains the registered agent for SLS and the Tribal Chairman has not been served with the Complaint. (Ex. 5 and Ex. 11).

## III.   ARGUMENT

### A.  Standard of Review.

Motions to dismiss for lack of subject matter jurisdiction fall into two general categories: facial attacks and factual attacks.  A *facial* attack is a challenge to the sufficiency of the pleading itself.  On such a motion, the court must take the material allegations of the petition as true and construed in the light most favorable to the nonmoving party.  Mortensen v. First Fed. Sav. and Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977).  A *factual* attack, on the other hand, is not a challenge to the sufficiency of the pleading's allegations, but a challenge to the factual existence of subject matter jurisdiction. Id.  On such a motion, no presumptive truthfulness applies to the factual allegations and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. Id.  In response to a Rule 12(b)(1) motion, the Plaintiff bears the burden of proving jurisdiction.  Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991) cert. denied, 501 U.S. 1222 (1991). ("When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff must bear the burden of persuasion.").

### B.  This Motion to Dismiss Must be granted Because the Tribe is Immune to Suit Absent Consent or Congressional Abrogation under the Doctrine of Tribal Sovereign Immunity.

Defendant Mansfield's Motion to Dismiss under Fed. R. Civ. P. 12(b)(1) must be granted due to the well-established doctrine of tribal sovereign immunity that prevents this Court from

having subject matter jurisdiction over the causes of action alleged in the Complaint. While the arguments related specifically to Defendant Mansfield as Co-Manager of SLS are more fully provided in Section D, it is necessary to first establish as a foundation, the legal basis for which Defendant Mansfield advances such arguments. The doctrine of tribal sovereign immunity is firmly rooted in American Indian law and precludes the Tribe from being subject to unconsented suit. Kiowa Tribe of Oklahoma v. Manufacturing Technologies, Inc., 523 U.S. 751, 754-56 (1998) ("Kiowa") (As a matter of federal law, an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity). Kiowa follows a long line of Supreme Court jurisprudence holding that Indian tribes are immune from suit absent explicit tribal consent or Congressional abrogation of their immunity. See Okla. Tax. Comm'n v. Citizen Band of Potawatomi Indian Tribe, 498 U.S. 505, 509 (1991) (holding that tribal sovereign immunity barred the State of Oklahoma from suing a tribe to collect a sales tax) ("Potawatomi"); Santa Clara Pueblo v. Martinez, 436 U.S. 49, 58 (1978) (holding that suit against a tribe to enforce federal statutory rights was barred by tribal sovereign immunity); Puyallup Tribe v. Washington Dept. of Game, 433 U.S. 165, 172 (1977) (holding that tribal sovereign immunity barred a State agency from suing a tribe); United States v. U.S. Fidelity & Guaranty Co., 309 U.S. 506, 512-14 (1940) (comparing tribal sovereign immunity to the sovereign immunity of the United States).

The U.S. Supreme Court has consistently stated that any change to the established doctrine of tribal sovereign immunity must come from Congress, and not the courts. While "Indian tribes have long been recognized as possessing the common-law immunity from suit traditionally enjoyed by sovereign powers," the Court has explained, tribes' immunity "is subject to the *superior and plenary control of Congress*." Santa Clara Pueblo, 436 U.S. 49, 58 (emphasis

added). When asked to abrogate tribal sovereign immunity in some new way, the Court defers to Congress. *See* Kiowa, 523 U.S. 751, 758-59; Potawatomi, 498 U.S. 505, 510-14 (1991). Courts defer to Congress in part because Congress has "consistently reiterated its approval of the immunity doctrine" as necessary to advance "its 'overriding goal' of encouraging tribal self-sufficiency and economic development." Potawatomi, 498 U.S. 505, 510 (citations omitted). The Supreme Court has observed that "Congress has always been at liberty to dispense with such tribal immunity or to limit it. Although Congress has occasionally authorized limited classes of suits against Indian tribes . . . Congress has consistently reiterated its approval of the immunity doctrine." Potawatomi, 498 U.S. 505, 509-10.

Because Congress must determine the extent to which tribal sovereign immunity applies, this Court should adhere to the settled practice and "defer" to Congress "in this important judgment." Kiowa, 523 U.S. 751, 759 (1998). Therefore, as Congress has not acted in any way to abrogate the sovereign immunity of the Tribe, SLS, or its officers, employees or agents, this Court lacks subject matter jurisdiction to proceed in the case against the Defendant.

## C. SLS is a Wholly Owned and Operated Instrumentality of the Tribe Over Which This Court Does Not and Cannot Exercise Subject Matter Jurisdiction.

Defendant Mansfield may properly challenge this Court's subject matter jurisdiction over this cause of action pursuant to Fed. R. Civ. P. 12(b)(1). Specifically, Defendant Mansfield challenges this cause of action asserting that he is a duly appointed officer of SLS, a wholly owned and operated instrumentality of the Tribe. The Tribe, its wholly owned and operated instrumentalities, and the officers, employees and agents are, absent a clear and unambiguous waiver in the form of a Tribal Council Resolution, immune from suit. Defendant Mansfield was acting, if at all, in his official capacity as the duly appointed Co-Manager of SLS and pursuant to the Regulatory Code at all times related to the allegations in the Complaint. By virtue of his

9

appointment as Co-Manager of SLS, Defendant Mansfield, absent an express waiver of sovereign immunity, is immune from suit for actions taken while acting, if at all, in his official capacity.

Defendant Mansfield's arguments, as they relate to his individual immunity as Co-Manager of SLS, more fully described in Section D and preceded by the foundational underpinnings of the doctrine of tribal sovereign immunity set forth in Section B, also stem from the well established that tribal sovereign immunity extends to and shields a tribe's agencies, instrumentalities and enterprises from suit absent a clear and unequivocal waiver of that immunity. Ramey Constr. Co. v. Apache Tribe of the Mescalero Reservation, 673 F.2d 315, 320 (10th Cir. 1982). These principles have been applied to tribally-chartered housing authorities, Weeks Constr. Inc. v. Oglala Sioux Housing Auth., 797 F.2d 668, 670-1 (8th Cir. 1986), and tribally-owned businesses. Cook v. AVI Enters. Inc., 548 F.3d 718, 725 (9th Cir. 2008); In re Green v. Richardson, 980 F.2d 590 (9th Cir. 1992), *cert. denied*, 114 S. Ct. 681 (1994). Moreover, such tribal corporate immunity extends to activities that occur "both on and off [tribal] reservation[s]." Kiowa, 523 U.S. at 754; *accord* High Desert Recreation, Inc. v. Pyramid Lake Paiute Tribe of Indians, 341 F. App'x 325, 327 (9th Cir. 2009) ("[B]oth Supreme Court precedent and that of several state courts hold that Indian tribes enjoy sovereign immunity from suits on commercial contracts, whether made on or off a reservation, so long as the subject business activity functions as an arm of the tribe."); *See also* People v. MNE, Case No. B242644, Slip Op. (2nd App. Dist. Jan. 21, 2014); and Ameriloan v. Superior Court, 169 Cal. App. 81 (2008).

This Circuit has yet to establish a test to determine whether a tribal enterprise is wholly owned and operated instrumentality of an Indian tribe and thus entitled to the tribe's sovereign

immunity. The Tenth Circuit of the United States, although not binding precedent, is instructive for purposes of the case at hand. Unlike other less comprehensive tests adopted to determine whether a tribal enterprise is a wholly owned and operated instrumentality of a Indian tribe, the Tenth Circuit has established a six (6)-factor analysis to determine whether a tribal enterprise is an instrumentality of the Tribe and subject to the protection of sovereign immunity. Breakthrough Mgmt. Croup, Inc. v. Chukchansi Gold Casino and Resort, 629 F.3d 1173, 1181 (10th Cir. 2010) ("Chukchansi"). In Chukchansi, the Tenth Circuit identified six (6) factors to determine if an economic entity had a sufficiently close relationship with the tribe so that the tribe's sovereign immunity extended to the economic entity. Id. These factors are: (1) the method of creation for the entity; (2) its purpose; (3) its structure, ownership, and management, including the amount of control the Tribe has over the entity; (4) whether the tribe intended the entity to have sovereign immunity; (5) the financial relationship between the tribe intended the entity; and (6) whether the purposes of tribal sovereign immunity are served by granting immunity to the entity. Id.

In this case, SLS is a wholly owned and operated instrumentality of the Tribe that is entitled to the Tribe's sovereign immunity because it meets all of the relevant factors used in the Chukchansi analysis. It is clear that the sovereign powers and protections of the Tribe necessarily extend to its wholly owned and operated instrumentality, SLS. First, the Tribe created SLS, under Tribal law and within the jurisdiction of the Tribe, for the specific purpose of diversifying its economy in order to improve the Tribe's self-sufficiency. (Ex. 3, Ex. 4, Ex. 5, and Ex. 11). SLS, as a wholly and operated instrumentality of the Tribe, is unlike a business enterprise organized under the corporate laws of any state, the ownership of which is typically vested in private citizens, for their personal benefit. (Ex. 3, Ex. 4, Ex. 5, and Ex. 11). In fact,

SLS serves as one of the Tribe's major sources of funding for its government operations and the provision of essential government services to its 762 members such as housing, education, social services, and health care. (Ex. 11). The Tribe relies heavily on SLS to meet its programmatic funding needs where there would otherwise be a shortfall and SLS through its Operating Agreement is required to disburse substantially all profits received to the Tribe on a monthly basis. (Ex. 11). Further, pursuant to Tribal law, the Tribe conferred upon SLS the right of sovereign immunity, to the same extent as that enjoyed by the Tribe. (Ex. 3, Ex. 4, Ex. 5, and Ex. 11). The SLS Creation Documents, which serve as the basis of formation of SLS under the LVD LLC Code, provide through its Operating Agreement, Section 3.2 that SLS cannot, without express written consent of the Tribe as sole Member, "borrow, pledge, assign...or otherwise restrict assets of the Company; sell or otherwise dispose of all or substantially all of the assets of the Company; and [cannot] waive the sovereign immunity of the Company" further demonstrating the control of the Tribe over SLS. (Ex. 5, Operating Agreement, §3.2). Several times throughout the SLS Operating Agreement, the intent to confer the sovereign immunity of the Tribe upon SLS can be found. Indeed, the protection of the operation of the SLS from unconsented suit serves – to protect tribal self-determination and ensure self-determination though self-government.

Because SLS meets all of the requisite factors set forth in Chukchansi, it is clear that SLS is an instrumentality of the Tribe, which shares the Tribe's sovereign immunity from suit. Accordingly, this case must be dismissed for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).

## D. Individual Tribal Officials or Employees Acting in their Official Capacity Enjoy the Protection of Sovereign Immunity of the Tribe.

This Court has found that tribal officials are entitled to sovereign immunity, as more fully defined in Sections B and C, *supra*, when they act in their official capacity and within the scope of their authority. Magyar v. Kennedy, No. 12-5906, Slip Op., 2013 WL 6119243, *3 (E.D.Pa. Nov. 20, 2013) (citing Imperial Granite Co. v. Pala Band of Missouri Indians, 940 F.2d 1269, 1271 (9th Cir. 1991)("Tribal officials are entitled to sovereign immunity when they 'act in their official capacity and within the scope of their authority.'"). Similarly, other courts have found that sovereign immunity extends to employees of tribes acting in their official capacity unless (1) clearly and unequivocally abrogated by Congress, (2) it is waived by the Tribal Council through an Ordinance or Resolution, or (3) the Tribe's Constitution permits a suit to enforce such rights. Imperial Granite, 940 F.2d at 1271; United States v. Oregon, 657 F.2d 1009, 1012, n. 8 (9th Cir. 1981).

A determination of whether the Tribe's sovereign immunity was waived is a jurisdictional question and must be answered without consideration of the particular facts of the case. Puyallup, 433 U.S. at 172-73; Hagen v. Sisseton Wahpeton Comm. College, 205 F.3d 1040 (8th Cir. 2000); Pan American v. Sycuan Band of Mission Indians, 884 F.2d 416, 418 (9th Cir. 1989). Therefore, before this Court can entertain any of the allegations contained in Plaintiff's Complaint, it must first determine whether it has jurisdiction to hear the case. Defendant Mansfield contends that the Court does not and cannot obtain subject matter jurisdiction over the Defendant Mansfield and that the allegations against the Defendant Mansfield must be dismissed.

Here, Defendant Mansfield's alleged actions occurred in the performance of his official capacity and within his scope of authority as a Co-Manager of SLS. (Ex. 13). As a Co-Manager of SLS, Defendant Mansfield is responsible for overseeing the operations of SLS and ensuring

13

that SLS complies with applicable Tribal and federal law.  (Ex. 5 and Ex. 13).  In fact, the Plaintiff's Complaint recognizes and alleges facts related to Defendant Mansfield in his official capacity. (Compl. ¶¶ 16-17 and 60-61). The Complaint contains no reference of actions taken, nor does it make allegations regarding, any action taken by Defendant Mansfield related to him in a capacity other than that of an officer, employee or agent of SLS. (Compl. ¶¶ 16-17 and 60-61).   To be sure, these allegations support Defendant Mansfield's argument regarding his entitlement to relief as "a tribal official acting in his official capacity and within the scope of his authority." Kennedy. Moreover, the Plaintiff has failed to allege that the Defendant has in any way acted outside the scope of his authority as Co-Manager of SLS.  Because the actions of the Defendant were performed in his official capacity, and within the scope of his authority, and because the sovereign immunity of the Tribe applies to SLS as a wholly-owned and operated instrumentality of the Tribe, and has not been waived, this Court lacks subject matter jurisdiction over Defendant Mansfield, and therefore the instant motion must be granted pursuant to Fed. R. Civ. P. 12(b)(1).

### E. Sovereign Immunity Precludes the Exercise of Personal Jurisdiction by the Court.

The doctrine of tribal sovereign immunity includes two distinct components.  First, in order to assert a cause of action against an Indian tribe, or any tribal wholly-owned and operated instrumentality, or any officer, agent or employee thereof acting within the scope of their authority, there must be an explicit waiver, or consent, to the exercise of personal jurisdiction over the sovereign in a particular forum. Secondly, even if the sovereign consents to be sued in a particular forum (i.e. personal jurisdiction is waived), the law under which the sovereign is being sued must also confer jurisdiction upon the Court. Circuits replete with cases involving Indian tribes consistently and explicitly state that tribal sovereign immunity is coextensive with that of

the United States. Pan American Co., 884 F.2d at 418; Chemehuevi, 757 F.2d 1047, 1050 (9th

Cir. 1985), *rev'd on other grounds*, California State Board of Equalization v. Chemehuevi Indian

Tribe, 474 U.S. 9 (1985); Kennerly v. United States, 721 F.2d 1252, 1258 (9th Cir. 1983);

Hamilton v. Nakai, 453 F.2d 152, 158-159 (9th Cir. 1971).

Whereas proper service of process (or consent) is a necessary prerequisite to this Court's

exercise of personal jurisdiction over defendants; and the United States, by virtue of its sovereign

immunity, is not subject to state law governing service of process and may only be served

subject to its consent.[3] It follows that, the sovereign immunity of the Tribe, and therefore SLS

and Defendant Mansfield, which is coextensive with that of the United States, are also not

subject to state law governing service of process.  Here, neither the Tribe nor SLS have

consented to be sued in this Court because there has been no waiver of Tribal sovereign

immunity nor is a waiver alleged in the Complaint.  Moreover, this Court does not have personal

jurisdiction over the Defendant Mansfield because the Tribe as sole member of SLS has not

consented to be sued in this Court, nor is it subject to service of process made pursuant to state

law.

Therefore, this Court has not and cannot acquire personal jurisdiction over Defendant

Mansfield and pursuant to Fed. R. Civ. P. 12(b)(2) the Motion to Dismiss in the instant action

must be granted.

**F. Assuming Arguendo Personal Jurisdiction Exists, Service of Process was not Perfected Properly on Defendant Mansfield Pursuant to 12(b)(5).**

In addition to the above jurisdictional bars precluding this case from proceeding, Plaintiff

has not properly effectuated service upon Defendant Mansfield (which service has not been

---

[3] *See* Fed. R. Civ. P. 4(i), which governs service of process upon the United States, its agencies, corporations, officers, or employers.

waived) pursuant to Fed. R. Civ. P. 4(d). Although this Court has not and cannot obtain personal or subject matter jurisdiction over this cause of action against Defendant Mansfield, this Court also lacks personal jurisdiction over the Defendant Mansfield for the reason of insufficient service of process. At no time has Defendant Mansfield waived service pursuant to Fed. R. Civ. P. 4(d). Fed. R. Civ. Rule 4, generally, provides for the manner and method within which to serve process on various parties. Plaintiff relies on Fed. R. Civ. P. 4(e)(1) and Pa. R.C.P. Nos. 402, 403, & 404 in serving Defendant Mansfield. *See* Pl. Aff. of Service, Docket No. 2. However, Defendant Mansfield is located outside of the Commonwealth of Pennsylvania and likely not subject to service of process within the Commonwealth over which personal jurisdiction could be obtained by a Pennsylvania court of general jurisdiction. Fed. R. Civ. P. 4(e)(1) provides that any action that may be brought in "courts of general jurisdiction in state where the district court is located *or where service is made*". (emphasis added). Service was attempted on Defendant Mansfield in the State of Michigan, therefore Defendant Mansfield should have been served in accordance with M.C.R. 2.105 which if not hand delivered, provides "for mailing by registered or certified mail return receipt requested and delivery restricted to the addressee....A copy of the return receipt *signed by the Defendant* must be attached to proof showing service.... (emphasis added). Here, the Complaint was delivered to Defendant Mansfield's place of employment on January 21, 2014 signed for by Beth Haapala an employee of the Lac Vieux Desert Casino Resort. (Ex. 9 and Ex. 14). Plaintiff attempted to serve Defendant by Certified Mail, Return Receipt Requested, Restricted Delivery which requires the addressee to sign for delivery. (Ex. 9 and Ex. 14). Plaintiff's Affidavit clearly indicated that Defendant Mansfield was not the signatory for the Complaint. *See* Pl. Aff. of Service, Docket No. 2.

Moreover, Defendant Mansfield is named in this lawsuit because of his position as Co-Manager of SLS. Therefore, such service, if at all, must occur in accordance with Fed. R. Civ. P. Rule 4 (e)(2)(C) which provides for service by "delivering a copy of [the summons and complaint] to an agent authorized by appointment or by law to receive service of process." The designated and authorized agent to receive such service on behalf of Defendant Mansfield in his capacity as Co-Manager of SLS is the Tribal Chairman. (Ex. 5 and Ex. 11). Thus, until the Tribal Chairman has been served with a copy of the Complaint, service has not been perfected. (Ex. 5). However, even assuming *arguendo* that service was properly effectuated, this Court would still lack both subject matter and personal jurisdiction, for the reasons set forth above, mandating dismissal of the instant action as to Defendant Mansfield.

### G. Plaintiff has Failed to Allege Any Facts in the Complaint from which this Court Could Determine that the Tribe Waived its Sovereign Immunity.

Unless the Court can find facts alleged on the face of the Complaint that, as a matter of law, would constitute an express and unequivocal waiver of the Tribe's sovereign immunity, the Court must find that it lacks subject matter jurisdiction and grant the Motion to Dismiss. Well-settled law states that a waiver of tribal sovereign immunity cannot be implied, but must be unequivocally expressed. Kiowa, 523 U.S. 751 (1998); Santa Clara Pueblo, 436 U.S. 49 (1978); Puyallup Tribe, 433 U.S. 165 (1977); Pan American, 884 F.2d at 419; *See generally* Chemehuevi. To effectively invoke this Court's jurisdiction over the cause of action alleged in the Complaint, the Plaintiff has the burden to allege on the face of her Complaint facts sufficient to enable this Court to find as a matter of law that the Tribe expressly and unequivocally waived (or that Congress has abrogated) its sovereign immunity. Chemehuevi, 757 F.2d at 1153. The Plaintiff has an obligation to show that such a waiver exists. Absent such a showing, this Court

cannot find that the Tribe, SLS, or that Defendant Mansfield has waived sovereign immunity in this case.

## IV.   **CONCLUSION**

For the reasons set forth herein, Defendant Mansfield respectfully requests that the instant Motion to Dismiss be granted pursuant to Fed. R. Civ. P. 12(b)(1), (2) and (5).   In the forefront, as a wholly owned and operated entity of a federally-recognized Indian tribe, SLS and its respective officers and agents acting in their official capacity, retain sovereign immunity from suit.   Absent an effective and explicit waiver of said sovereign immunity - which Plaintiff has not and cannot demonstrate -  this Court is barred from presiding over this matter or over Defendant Mansfield pursuant to Fed. R. Civ. P. 12(b)(1) and (2).   Furthermore, Plaintiff failed to properly effectuate service upon Defendant Mansfield, warranting dismissal pursuant to Fed. R. Civ. P. 12(b)(5).   For the reasons set forth above, Defendant Mansfield's Motion to Dismiss must be granted.

Dated: February 11, 2014                    Respectfully Submitted By:


                                                     */s/ Tanya Sue Wanageshik*
                                                     Tanya S. Wanageshik (MI P72933)
                                                     *(Admitted Pro Hac Vice)*
                                                     ROSETTE, LLP
                                                     25344 Red Arrow Hwy., Suite B
                                                     Mattawan, MI 49071
                                                     (269) 283-5005 (voice)
                                                     (517) 913-6443 (fax)
                                                     Admitted Pro Hac Vice

                                                     *Pro Hac Vice Sponsor*
                                                     John M. Willis, Esq. (PA 38622)
                                                     The Law Offices of John M. Willis
                                                     Three Penn Center

1515 Market Street, Suite 1510
Philadelphia, PA 19102
(215) 498-1000 (office)

## CERTIFICATE OF SERVICE

I certify that on February 11, 2014, I served a true and correct copy of the foregoing *Motion to Dismiss Action Against Specially-Appearing Defendant Craig Mansfield Under Rules 12(b)(1), (2) and (5)* along with the *Brief in Support of Motion to Dismiss Action Against Specially-Appearing Defendant Craig Mansfield Under Rules 12(b)(1), (2) and (5)*; the Declaration of James Williams, Jr., Tribal Chairman, the Declaration of Craig Mansfield, SLS Co-Manager, the Declaration of Misaabe McGeshick, Regulatory Agent, the Declaration of Beth Haapala, Administrative Secretary; and a proposed *Order Dismissing Plaintiffs' Complaint* to be served on the following counsel via electronic filing:

Robert F. Salvin (RFS2522)
Two Bala Plaza, Suite 300
Bala Cynwyd, PA 19004
215-300-2388
215-271-2820 (fax)
Robert.salvin@outlook.com
*Counsel for Plaintiff*

ROSETTE, LLP

/s/ Tanya Sue Wanageshik
Tanya Sue Wanageshik (MI P72933)
*(Admitted Pro Hac Vice)*
25344 Red Arrow Hwy., Suite B
Mattawan, MI 49071
(269) 283-5005 (voice)
(517) 913-6443 (fax)

*Pro Hac Vice Sponsor*
John M. Willis, Esq. (PA 38622)
The Law Offices of John M. Willis
Three Penn Center
1515 Market Street, Suite 1510
Philadelphia, PA 19102
(215) 498-1000 (office)